AO 91 (Rev. 6/95) Criminal Complaint

E-FILED
Friday, 04 November, 2005 10:56:39 AM
Clerk, U.S. District Court, ILCD

# United States District Court

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | **FILED** | CRIMINAL COMPLAINT |
| v. | NOV - 4 2005 | CASE NUMBER: 05 - M - 6054 |
| EDWARD L. WILLIAMS and GEORGE MOORE | JOHN M. WATERS, Clerk U.S. DISTRICT COURT CENTRAL DISTRICT OF ILLINOIS | |

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about November 3, 2005 in Peoria county, in the Central District of Illinois defendant(s) did, (Track Statutory Language of Offense) knowingly possess 50 grams or more of cocaine base (crack), a Schedule II controlled substance, with intent to distribute,

in violation of 21 United States Code, Section(s) 841(a)(1) and (B)(1)(A)

I further state that I am a(n) Special Agent, DEA and that this complaint is based
                                         Name
on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

/s/ Agent

Signature of Complainant

Sworn to before me and subscribed in my presence,

November 4, 2005                                         at          Peoria, Illinois
Date                                                                    City and State

U.S. Magistrate Judge
John A. Gorman                                                  /s/US MAGISTRATE

Name & Title of Judicial Officer                                Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF ARREST WARRANTS

1. Your affiant, Paul Larsen, is a special agent with the Drug Enforcement Administration, stationed in Springfield, Illinois. Your affiant has been so employed since July 1999. Prior to being employed by the Drug Enforcement Administration, your affiant was employed for five years as a police officer for the Florence, S.C., Police Department. From 1997 to 1999, your affiant was assigned to the Drug Enforcement Administration as a narcotics investigator. During the course of your affiant's law enforcement experience, your affiant has received extensive training for investigations of narcotics violations. In addition, your affiant has also participated in numerous arrests and seizures.

2. This affidavit is made in support of an application for an arrest warrant for Edward L. "Pete" WILLIAMS and George MOORE. The unlawful activity is the possession with intent to distribute more than fifty grams of a mixture and substance containing crack cocaine, in violation of Title 21 U.S.C., Section 841 (a)(1) and (b)(1)(A).

3. Your affiant is familiar with the following facts based upon your affiant's personal observations and upon information officially supplied to your affiant by other law enforcement agents or the people described in this affidavit.

4. During this investigation, agents learned WILLIAMS lived at 1402 E. War Memorial Drive, Peoria, Illinois, and that he was a crack cocaine distributor in the Peoria area. On November 3, 2005, members of the DEA's Springfield, Illinois, Resident Office and the Peoria Police Department initiated surveillance on WILLIAMS at his home at 1402 E. War Memorial Drive, Peoria. Officers saw WILLIAMS leave the home and enter into a bluish Mercedes Benz, Illinois license plate 792-5311. At this time, WILLIAMS was wearing a tan two-tone jacket. WILLIAMS left his home and drove to a nearby gas station, where he pumped gasoline and removed the jacket. Surveillance agents continued to follow WILLIAMS as he drove to the 1900 block of Antoinette in Peoria. A male later identified as George MOORE got into the front passenger seat of WILLIAMS' vehicle. Police followed the vehicle to the area of 1520 S. Faraday Drive, Peoria. WILLIAMS parked the vehicle and got out. MOORE stayed in the car. Several minutes later, police then saw WILLIAMS coming from a front yard in the area of 1520 S. Farady. WILLIAMS was again wearing the two-tone

jacket. Before getting into the car, WILLIAMS removed the jacket, opened the rear driver's side door and appeared to place the jacket on the rear seat.

5. Surveillance officers then followed WILLIAMS as he drove away from Faraday Street. By activating its emergency lights, a marked Peoria patrol car initiated a traffic stop for not having a front license plate. WILLIAMS drove off and sped down an alley between Stanley and Arago streets in Peoria. Police blocked the vehicle. WILLIAMS remained inside the car and was taken into custody. MOORE was seen running from the car with the tan two-tone jacket falling away from his possession. A police officer saw a black object in MOORE's hand as MOORE ran from police. It appeared as if MOORE removed the black object from the tan jacket. The police officer saw a whitish-colored object fall from MOORE's possession as he landed from jumping a fence. A second police officer saw MOORE drop the black object in the front yard of 1534 S. Griswold, Peoria. MOORE was then taken into custody.

6. The whitish-colored object was seized and described as a plastic baggie containing suspected crack cocaine, with a total weight of approximately 124 grams. Inside the black object, which was a plastic bag, was another plastic baggie containing suspected crack cocaine, with a total weight of approximately 125 grams. A subsequent field test of the suspected crack cocaine indicated a positive response for the presumptive presence of cocaine.

7. During a post-arrest interview, your affiant advised MOORE of his rights pursuant to Miranda. MOORE said he understood his rights and wished to speak with investigators. At first MOORE said he got into the vehicle with the crack cocaine, which he thought was an eighth of a kilogram, or approximately 125 grams. Later, after investigators advised MOORE they believed the crack cocaine was actually WILLIAMS', MOORE said he remembered WILLIAMS placing the jacket on the rear seat when WILLIAMS re-entered the car on Faraday Street. In addition, MOORE said, that when police attempted the traffic stop, WILLIAMS told MOORE that he was "dirty," which MOORE knew to mean either WILLIAMS was in possession of drugs or a gun. At that point, WILLIAMS looked behind him, which caused MOORE to see the jacket and realize that was the "dirty" item. MOORE said he grabbed the jacket and took off running. MOORE said he could tell the jacket contained drugs once he took possession of the jacket.

8. During another post-arrest interview, your affiant advised WILLIAMS of his rights pursuant to Miranda. WILLIAMS said he understood his rights and preferred to have an attorney present. S/A Larsen explained to WILLIAMS that agents wanted to know what happened inside the vehicle and asked WILLIAMS if he didn't want to make a statement or just would prefer to have an attorney present. WILLIAMS then said he picked up MOORE and MOORE told him not to stop when the police car tried to pull them over.

9. An Illinois state search warrant was then obtained for WILLIAMS' home at 1402 E. War Memorial Drive. During the search, officers found WILLIAMS' Illinois state identification card in the master bedroom, along with several pictures of WILLIAMS and associates. In addition, police found a plastic bag in the kitchen. The plastic bag contained what appeared to be the wrappings for a kilogram of cocaine. Suspected cocaine residue was seen on the wrappings. A subsequent field test of the residue indicated a positive response for the presumptive presence of cocaine. A box of baking soda, frequently used to make crack cocaine, was also found in the kitchen. Also, police found a loaded Taurus .38 caliber handgun under a pillow on the bed in the master bedroom. A scale was found in a closet of the master bedroom, and another scale was found in the kitchen. Both scales appeared to be similar to those used by drug dealers to weigh drugs for sales.

10. A second Illinois state search warrant was obtained for 1520 S. Faraday St., which was learned to be the home of WILLIAMS' mother. During the search, police found a plastic bag under a couch. Inside the plastic bag were two smaller bags, each containing suspected crack cocaine. Each bag weighed approximately 126 grams. A subsequent field test of the suspected crack cocaine indicated a positive response for the presumptive presence of cocaine. During a search of the kitchen, police found a plastic bag on top of a set of cabinets. Inside the bag were small baggies of the type commonly used by drug dealers to package drugs, a grinder with suspected cocaine residue, a spoon with suspected cocaine residue and a plastic baggie containing suspected cocaine, with a weight of approximately five grams. A subsequent field test of the suspected cocaine found on those items indicated a positive response for the presumptive presence of cocaine.

11. Lillian Moore, WILLIAMS' mother, who was home during the search warrant, explained to police that WILLIAMS came to the home at approximately the time police were conducting surveillance. Moore said while she didn't know exactly what WILLIAMS did, she knew that he spent a brief time in the kitchen and in the room with the couch, under which the suspected crack cocaine was found. Moore denied knowing about the presence of the suspected crack cocaine and the items of paraphernalia.

12. Your affiant knows from prior experience that the weights of suspected crack cocaine seized in this case are amounts commonly associated with the possession with intent to distribute.

13. Based on the information contained in this affidavit, your affiant requests the issuance of arrest warrants for Edward L. "Pete" WILLIAMS and George MOORE.

s/AGENT
Special Agent Paul Larsen
Drug Enforcement Administration

Sworn to and subscribed to
Before me this date
November 4, 2005

s/US MAGISTRATE JUDGE
John A. Gorman
United States Magistrate Judge
Peoria, Illinois